In the Matter of John N. PHILBERT,
Cheryl A. Philbert, Debtors.

No. 05–12501.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

March 30, 2006.

Yvette Gaff Kleven, Fort Wayne, IN, trustee.

Todd Belanger, Indianapolis, IN, for Creditor JP Morgan Chase Bank.

### DECISION ON ORDER TO SHOW CAUSE

ROBERT E. GRANT, Bankruptcy Judge.

On February 13, 2006, the court was scheduled to hold a trial of the issues raised by a motion for relief from stay filed on behalf of JP Morgan Chase Bank and the trustee's objection thereto. The debtors appeared for this trial both in person and through their counsel, Freder-

ick Wehrwein, as did the trustee, Yvette Kleven, and her counsel, Douglas Adelsperger. Movant's counsel, Todd Belanger, was nowhere to be seen. The court denied the motion for relief from stay and, on its own motion, issued an order requiring Mr. Belanger to show cause in writing why he should not be required to pay the reasonable attorney fees incurred by the trustee [1] or otherwise sanctioned because of his failure to appear for the scheduled trial. Mr. Belanger filed a timely response to the order to show cause and it is that response which brings the matter before the court for a decision.

Rule 16(f) of the Federal Rules of Civil Procedure allows the court to impose sanctions upon an attorney who fails to appear for a pre-trial or other conference or who is substantially unprepared to participate in such a conference. The rule is an expression of the court's inherent authority, *G. Heileman Brewing Co. Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 651–53 (7th Cir.1989); *Matter of Baker*, 744 F.2d 1438, 1441 (10th Cir.1984), and articulates two of the court's most fundamental expectations of the attorneys that appear before it—show up and be prepared. By its terms, however, the rule applies only to pre-trial and other preliminary conferences in adversary proceedings. Fed. R. Bankr.P. Rule 7016. It does not specifically apply to contested matters, *see*, Fed. R. Bankr.P. Rule 9014(c), or to trials. Does this mean that counsel can, with impunity, fail to appear for trials or hearings scheduled in contested matters or that the court is powerless if counsel appears and yet is not prepared? Hardly. Rule 16 was not designed to restrict the court's authority and the "absence of language in the federal rules specifically authorizing or describ-

---

1. Although the debtors and their attorney also appeared for the scheduled trial, their participation in the proceedings was not anticipated since they had not objected to the motion for relief from stay and had not been subpoenaed to appear.

ing a particular judicial procedure should not, and does not, give rise to a negative implication of prohibition." *Heileman Brewing*, 871 F.2d at 652. *See also, Baker*, 744 F.2d at 1441 (no reason for applying sanctions differently to other pretrial matters). Furthermore, the vices that Rule 16 was designed to combat—wasted effort, unnecessary expense, and delay—are just as real and the goals it seeks to promote—efficient and expeditious management of cases—are just as important in contested matters as they are in adversary proceedings. Accordingly, the court holds that it may, whether through Rule 16(f) or its inherent authority, impose sanctions upon an attorney who fails to appear for proceedings in contested matters or who appears but is substantially unprepared to participate in those proceedings. This conclusion is appropriate not only because of the purpose and spirit of the rule but also because the court is exercising its "power ... 'in a manner that is in harmony with the Federal Rules of Civil Procedure.'" *Heileman Brewing*, 871 F.2d at 652 (quoting *Landau & Cleary Ltd. v. Hribar Trucking, Inc.* 867 F.2d 996, 1002 (7th Cir.1989)).

Although that consistency is reason enough for doing so, there are reasons beyond the spirit and purpose of the rule and harmony with the Federal Rules of Civil Procedure for applying Rule 16(f) to contested matters and to trials in contested matters. Even though they may be called "hearings," proceedings in many contested matters are more analogous to pre-trial or scheduling conferences in civil litigation than they are to anything else, because the court's purpose is to explore the nature of the dispute and, if it cannot be resolved at that time, establish a schedule for its resolution. This similarity in purpose justifies a similarity in the court's expectations of the participants and in the consequences of a failure to fulfill them. But there is also a similarity of effect—in the sense of the finality accorded to the court's decision—because, after a contested matter has been disposed of, the effect of that disposition may be more analogous to preliminary determinations in civil litigation than to final judgments, and this similarity also justifies a similarity in the court's expectations and in the consequences of the participants' failure to fulfill them.

Motions for relief from stay are an excellent example of the latter type of similarity. Because of the limited scope of the issues presented and the summary nature of the proceedings, a final decision on a motion for relief from stay does not have the same type of res judicata and collateral estoppel effect that is given to final decisions in traditional litigation. *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223, 1234 (7th Cir.1990). Instead, the proceedings are "analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination...." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 33 (1st Cir.1994). Thus, a creditor that files a motion for relief from stay and loses is not prevented from filing another, potentially more successful, motion at a later date. *In re Carson*, 34 B.R. 502, 507 (D.Kan.1983); *In re Sun Valley Ranches, Inc.*, 43 B.R. 641, 642 (Bankr.Idaho 1984); *In re Stone*, 90 B.R. 71 (Bankr.S.D.N.Y.1988). Motions to dismiss the bankruptcy case are treated similarly—to lose one does not prevent the movant from bringing another. *See, In re Sylmar Plaza, L.P.*, 314 F.3d 1070, 1074 (9th Cir.2002); *Bank of Eureka v. Partington*, 91 F.2d 587, 589 (9th Cir.1937); *In re RBGSC Inv. Corp.*, 253 B.R. 352 (E.D.Penn.2000). *See also, Matter of Jones*, 119 B.R. 996, 1005 (Bankr.N.D.Ind.1990)(denial of confirmation does not preclude another plan). One result of these principles is that the consequences of having such a motion denied

are not as severe as the consequences of an adverse judgment in traditional civil litigation. Without res judicata as an affirmative defense, the successful opponent can be required to try to duplicate its original victory and to again invest time, money and effort in opposing a subsequent motion. Rule 16(f) expects an absent or unprepared attorney to compensate its opposition for the time and effort wasted due to a pre-trial conference that may need to be repeated, and there is an equivalent sort of justice in requiring similar compensation when the potential for the same type of duplicated effort arises out of counsel's failure to appear or be prepared for proceedings on a motion that can be filed again. Indeed, Rule 41(a)(2), which does apply to contested matters, contemplates just such a possibility when an action is voluntarily dismissed without prejudice, *see e.g., Cauley v. Wilson*, 754 F.2d 769, 772 (7th Cir.1985), and there is no logical reason that the court's ability to require compensation for wasted effort should be more restricted when a substantially similar disposition results from counsel's failure to appear for or be prepared for the proceedings.

 The failure to appear is one type of conduct specifically identified by Rule 16(f) as the basis for sanctions. At least to the extent that the opposing party should be compensated for the reasonable costs and expenses incurred because of counsel's non-compliance, the rule is almost, but not quite, mandatory. Unless noncompliance was "substantially justified" or other circumstances would make an award "unjust" the nondefaulting party is entitled to reimbursement. As a result, the imposition of sanctions under the rule does not depend upon a finding of bad faith, willfulness, or contumaciousness. *Baker*, 744 F.2d at 1440–41. A negligent failure to comply will suffice. *Id.* at 1441. *See also, Harrell v. U.S.*, 117 F.R.D. 86, 88 (E.D.N.C.1987); *Barsoumian v. Szozda*, 108 F.R.D. 426

(S.D.N.Y.1985). Ultimately, however, the decision to impose sanctions, as well as the nature of any sanction, is a matter committed to the court's discretion. *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.*, 982 F.2d 686, 692 (1st Cir.1993); *Heileman Brewing*, 871 F.2d at 655; *Baker*, 744 F.2d at 1440.

 Counsel indicates that he failed to attend the trial because his computer had been set to place the court's electronic notices into a spam filter folder, rather than counsel's in-box, and counsel was used to viewing them there. Through some sort of computer error this folder was deleted, with the result that he did not receive the notice of trial. Counsel was not aware of the situation and thought the court's notices were being received at another computer in his office, when in fact they were being filtered out.

This response does not show that counsel's failure to appear for the scheduled trial was substantially justified or demonstrate that other circumstances would make an award unjust. The court acknowledges that Mr. Belanger's absence was not willful or contumacious. It was, instead, simply negligent because of the manner in which his computer was set up to deal with the notices the court issued through its ECF system. While that may explain counsel's absence and help to make it somewhat understandable, that is not enough. It must have been substantially justified.

 It is incumbent upon attorneys to adopt internal office procedures that ensure the court's notices and orders are brought to their attention once they have been received. *In re Schlosser*, 100 B.R. 348, 350 (Bankr.S.D.Ohio1989); *Greene v. Union Mut. Life Ins. Co.*, 102 F.R.D. 598, 603 (D.Maine 1984). This is just as true in these days of electronic noticing as it was when things were sent by first class mail. To rely on procedures that treat the

court's electronic notices as the functional equivalent of junk mail is not acceptable. Furthermore, it is counsel's responsibility to monitor the progress of their cases and the court's docket. *Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C.Cir. 2004); *United States, ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2nd Cir.2001); *Williams v. Hatcher*, 890 F.2d 993, 995 (7th Cir.1989); *DeRango v. United States*, 864 F.2d 520, 523 (7th Cir.1988); *In re DeLaughter*, 295 B.R. 317, 320 (Bankr.N.D.Ind.2003). This is especially so where motions for relief from stay are concerned, although it certainly is not limited to them. The Bankruptcy Code requires stay motions to be handled with dispatch. 11 U.S.C. § 362(e). Accordingly, when he filed the motion counsel knew he was initiating proceedings that had to be dealt with expeditiously. Counsel also selected the deadline for filing objections to the motion when he prepared and served the notice of that opportunity, *see*, N.D. Ind. L.B.R. B–2002–2, and so knew that he could expect something to be happening around that time. Had counsel checked the court's docket he would have seen that something was. Under these circumstances, the court cannot find that counsel's failure to appear for trial was substantially justified.

The trustee was required to and did go to the trouble of preparing for and attending the scheduled trial. Because of Mr. Belanger's absence, those efforts were largely wasted and the court sees nothing unjust about requiring an attorney who has caused its opposition to unnecessarily devote time and trouble to a matter to reimburse them for the reasonable value of their labors. In the court's opinion such a result is necessary, not only as a matter of economic and procedural fairness, but also in order to impress upon litigants the importance of appearing for and being prepared for proceedings scheduled with regard to the things they file.

The court's expectations of the attorneys who appear before it are simple: show up and be prepared. These expectations are not unusual and nothing about them seems to be unreasonable. Yet, all too often they are disappointed. Whether it arises out of a lack of care, a lack of interest, or just a lack of manners, the unexpected failure of attorneys to appear for proceedings that are scheduled because of something they have filed is far too common. Many members of the bar seem to operate on the proposition that, even though they are the moving force which prompts the court to schedule something on its calendar, appearing for those proceedings is optional. There are many adjectives that can be applied to such an attitude; none of them complimentary. In the past the court has tried to convey its expectations, without having to resort to sanctions, by simply grumbling, with lectures and admonitions from the bench, and by requiring attorneys to show cause why they should not be required to retain local counsel, but without success. The problem persists and shows no signs of diminishing. Sterner measures appear to be needed.

Therefore, Mr. Belanger shall reimburse the estate for the reasonable attorney fees and expenses it incurred as a result of preparing for and attending the trial scheduled in this matter for February 13, 2006. In order to compensate the United States for the costs he has unnecessarily imposed upon it and the additional time and attention he has required the court to devote to this matter, thereby depriving other litigants of its attention, and to deter similar conduct, he shall also pay the clerk of this court the sum of $150.00. An appropriate order will be entered.