**In the Matter of Jon B. MARTIN, Debtor.**

No. 06–10147.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

July 20, 2006.

Terri Long, Law Offices of Terri Long, Homewood, IL, for Wells Fargo Bank, N.A.

Mark A. Warsco, Rothberg, Warsco & Logan, L.L.P., Fort Wayne, IN, Trustee.

### DECISION ON ORDER TO SHOW CAUSE

ROBERT E. GRANT, Bankruptcy Judge.

On February 23, 2006, the trustee in this Chapter 7 case filed a motion to sell real estate commonly known as 814 Charles Street, Huntington, Indiana, free and clear of liens, for the sum of $66,000. The motion stated that the trustee had a buyer for the property and believed that the proposed sale would be in the best interests of the estate. On the same day, the trustee served notice of the motion to sell and the opportunity to object thereto upon all creditors and parties in interest, advising them that objections to the motion needed to be filed by March 17, 2006. *See*, N.D. Ind. L.B.R. B–2002–2. A week after the trustee's motion to sell, on March 1, 2006, Wells Fargo Bank, N.A. filed a motion for relief from stay as to the same property. This motion alleged that Wells Fargo held a mortgage upon the property, which secured a claim in the sum of $43,573.32, that there was no equity in the property and that the creditor's interest was not adequately protected. The trustee promptly objected to the stay motion and the matter was scheduled for a trial on March 29, 2006. *See*, 11 U.S.C. § 362(e). At 5:00 p.m. on the day before the trial, Wells Fargo filed a withdrawal of its motion to

modify the stay. Since trial was scheduled for the morning of the next day, this attempt came (quite literally) a bit late in the day. More importantly, since the trustee had objected to the motion for relief from stay and had not joined in the requested withdrawal, Wells Fargo's motion could not be dismissed as a matter of right, *see,* Fed.R.Civ.P. Rule 41(a)(1); Fed. R. Bankr.P. Rules 9014 and 7041. The case was called for trial as scheduled, at which time the trustee was present but Wells Fargo's counsel was nowhere to be seen. The trustee advised the court of the requested withdrawal that had been filed the previous afternoon. The court denied both Wells Fargo's motion for withdrawal and the motion for relief from stay for reasons that were stated on the record. On its own motion, the court also issued an order requiring creditor's counsel to show cause why she should not be required to pay the reasonable attorney fees incurred by the trustee, or otherwise sanctioned, as a result of her failure to appear for the scheduled trial and/or her failure to make a reasonable inquiry as to the allegations concerning a lack of equity or other cause for relief from stay as to the property described in the motion. Counsel filed a timely response to the order to show cause and it is that response which brings the matter before the court for a decision.

Counsel's response indicates that she cannot recreate the thought process that went into the motion for relief from stay or the allegations it contained concerning the lack of equity in the property. She does, however, speculate that she believed the property was subject to a homestead exemption that would leave little equity in the property once it was taken into account. As for the failure to appear for the scheduled trial, counsel indicates that she had intended to appear, but the day before trial her client instructed her to close the file because the mortgage had been paid from the proceeds of the trustee's sale,

which no one had objected to. Those instructions are what prompted the motion to withdraw that was filed later that afternoon. Counsel states she then contacted chambers and was informed that the withdrawal would not suffice and that someone should appear for the scheduled proceedings. Although the trustee was apparently never asked to join in the dismissal so that the withdrawal of the stay motion would be automatic, *see,* Fed.R.Civ.P. Rule 41(a)(1), after learning that the matter would proceed as scheduled, counsel contacted the trustee to ask him if he would advise the court that the stay motion had been withdrawn and the trustee agreed to do so. (The trustee did in fact do so, but, for the reasons stated in open court, the motion to withdraw was denied.)

A court's most fundamental expectations of the attorneys who appear before it are to show up and be prepared. Thus, an attorney who fails to appear for proceedings scheduled because of something they have filed, or who appears but is substantially unprepared to participate in those proceedings, may be sanctioned either through the court's inherent authority or through Rule 16(f) of the Federal Rules of Civil Procedure. *See, G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.,* 871 F.2d 648, 651–53 (7th Cir.1989); *Matter of Sanction of Baker,* 744 F.2d 1438 (10th Cir.1984); *Matter of Philbert,* 340 B.R. 886 (Bankr.N.D.Ind.2006). In bankruptcy cases this is true for both adversary proceedings and contested matters. *Philbert,* 340 B.R. at 889.

The failure to appear is one of the things Rule 16(f) specifically identifies as the basis for sanctions, Fed.R.Civ.P. Rule 16(f), and this includes the failure to appear for trial. *Philbert,* 340 B.R. at 890. At least to the extent that the opposing party should be compensated for the costs and expenses incurred because of that fail-

ure, the rule is almost, but not quite, mandatory. Unless noncompliance was "substantially justified" or other circumstances would make an award "unjust," the non-defaulting party is entitled to reimbursement. As a result, the imposition of sanctions under Rule 16(f) does not depend upon a finding of bad faith, willfulness, or contumaciousness. *Baker*, 744 F.2d at 1440–41. Negligence will suffice. *Id.* at 1441. *See also, Harrell v. U.S.*, 117 F.R.D. 86, 88 (E.D.N.C.1987); *Barsoumian v. Szozda*, 108 F.R.D. 426 (S.D.N.Y.1985). Ultimately, however, the decision to impose sanctions, as well as the nature of any sanction, is a matter committed to the court's discretion. *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit International, Inc.*, 982 F.2d 686, 692 (1st Cir.1993); *Heileman Brewing*, 871 F.2d at 655; *Baker*, 744 F.2d at 1440.

Wells Fargo filed a motion for relief from stay—a motion which the court is required to address with dispatch, 11 U.S.C. § 362(e)—to which the trustee objected. Accordingly, the court scheduled the motion and the trustee's objection thereto for a trial to be held on March 29, 2006. Yet, because her client had been paid in full from the proceeds of the sale (a sale which Wells Fargo did not object to even though it asked to be relieved of the automatic stay so that it could foreclose its mortgage) and because she had been instructed to close her file, counsel decided not to attend the scheduled trial. Instead, she asked the trustee to inform the court that the motion had been withdrawn.

 Counsel's response does not show that her failure to appear for the scheduled trial was substantially justified. Counsel made a conscious decision not to appear for proceedings that had been scheduled with regard to a motion she had filed. While she and her client may have lost interest in that request, that does not change the fact that her request for relief

from stay set things in motion, culminating in a scheduled trial. There is absolutely no reason that she could not have appeared on the day of trial and advised the court that her motion had become moot. The unilateral motion to withdraw was not an effective substitute because it had not been consented to or joined in by the trustee. As a result, on the day of trial, there was still a motion pending before the court—technically two motions—which needed to be ruled upon and disposed of. (The court would note that "motion moot" is a recognized disposition for a pending matter.) Absent a concrete understanding with opposing counsel as to what that ruling should be—in other words something that had been affirmatively agreed to by both parties—an attorney needs to appear for proceedings they are responsible for having initiated. Here, there was no such agreement; instead counsel chose to use the trustee as a courier carrying her messages to the court and then left it to the court to determine how the matter should be disposed of.

It is one thing, and quite appropriate, to rely upon an adversary to convey the parties' concrete understanding to the court as to what is to be done in a particular situation, when all the court then needs to do is make provisions to implement that understanding. This is true whether the understanding is some type of settlement, a withdrawal of the request for relief or an agreed upon litigation schedule. The court understands that there is no good reason two attorneys need to show up when one will do. It is quite another thing, however, to have one's adversary simply carry a message to the court that you will not be attending a scheduled hearing and that the court should rule on something that you filed in your absence. That is what counsel did here. As children, all of us were taught to clean up our own messes and the same is true of litiga-

tion. If the court needs to rule on something you have filed, you need to be there and cannot simply say, "Handle it without me." The attorney who files a request for relief is responsible for that filing and should be the one to see that it is dealt with. If an attorney is too busy, or too important, or too far away to appear in court when expected to do so, they should retain local counsel. Alternatively, if an attorney is not willing or able to appear in court when expected to do so, and is not inclined to associate with local counsel, they should think twice about accepting the engagement.

Even though counsel's failure to appear was not substantially justified, by giving her the benefit of the doubt, this appears to be a situation where "other circumstances" might make an award of fees "unjust." This is not a situation in which counsel's absence was a total surprise to all concerned, even though it was a surprise to the court. After filing the motion to withdraw she contacted the trustee and asked him if he would advise the court that the creditor wanted to withdraw the motion and he agreed to do so. Consequently, even though counsel did not fulfill the court's expectations as to what was required of her, she may have been lulled into a false sense of security by the trustee's agreement and felt that her presence was not necessary. We trust that this decision will help to clarify the court's expectations. Those expectations are really quite simple: If the court needs to rule on something you have filed, you need to be there. *See, In re Philbert,* 340 B.R. 886 (Bankr.N.D.Ind.2006); *In re Szymanski,* 344 B.R. 891 (Bankr.N.D.Ind.2006); *Matter of Larson,* 64 B.R. 102 (Bankr.W.D.Mo. 1986).

■ Rule 16(f) is not the only procedural rule which bears upon counsel's actions in this case. Rule 9011, the bankruptcy equivalent of Rule 11 of the Federal Rules of Civil Procedure, does so as well. Fed. R. Bankr.P. Rule 9011. Rule 9011 imposes an affirmative obligation upon counsel to conduct a reasonable inquiry into both the law and the facts before advancing a particular position to the court. Fed. R. Bankr P. Rule 9011(b). *See also, Frantz v. United States Powerlifting Federation,* 836 F.2d 1063, 1064 (7th Cir.1987); *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 751 (7th Cir.1988); *McGhee v. Sanilac County,* 934 F.2d 89, 93 (6th Cir.1991). In other words, it imposes a duty on counsel "to stop, think and investigate more carefully before serving and filing papers." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 398, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). This duty to make a reasonable inquiry extends not only to the claim being asserted but also to the existence of any obvious affirmative defenses. *Matter of Excello Press, Inc.,* 967 F.2d 1109, 1112–13 (7th Cir.1992). *See also, F.D.I.C. v. Calhoun,* 34 F.3d 1291, 1299 (5th Cir.1994). The reasonableness of an attorney's pre-filing inquiry is based upon the circumstances of each case. *Mars Steel Corp. v. Continental,* 880 F.2d 928, 932 (7th Cir.1989)(en banc); *Fred A. Smith Lumber,* 845 F.2d at 751.

■ Here, counsel's investigation into the central claim of the motion for relief from stay—that there was no equity in the property in question—was either woefully inadequate or non-existent. Equity for the purposes of § 362(d)(2) is a function of the value of property minus the amounts due on account of the liens and encumbrances against it, and any claimed exemption. *In re Indian Palms Assoc., Ltd.,* 61 F.3d 197, 206–07 (3rd Cir.1995); *Matter of Sutton,* 904 F.2d 327, 329 (5th Cir.1990); *In re Diversified Energy Venture,* 311 B.R. 712, 717 (Bankr.W.D.Pa. 2004); *Matter of Jones,* 119 B.R. 996, 1005 (Bankr.N.D.Ind.1990). As the moving

party it was the creditor's burden to prove this fact. 11 U.S.C. § 362(g). Consequently, when she alleged that there was no equity in the property, counsel was representing that she had made some kind of investigation into the issues of value, the balances due on account of movant's and any other liens and the amount of any claimed exemption. Counsel acknowledges that she cannot reconstruct her investigation into those issues and instead speculates that she believed the debtors had claimed an exemption in the property that left "little or no equity." Yet, that question could have been quickly answered by a simple check of the court's docket. Debtors claimed their exemptions on schedule C which was filed on February 16, 2006, in plenty of time for counsel to have reviewed it prior to filing the motion for relief from stay. While the debtors did claim an exemption in the property in question, that exemption was only $270. Counsel can rely upon what her client told her about the amount due on account of its mortgage, $43,573.32, but there is no information concerning what counsel may have done to inquire into the value of the property. The only information concerning that value is the $66,000 that had been offered by the trustee's proposed buyer. Consequently, a simple review of the court's docket would have suggested that there was more than $20,000 in equity in the property, after fully paying both the amount due Wells Fargo and the debtor's claimed exemption. Counsel could not say otherwise unless she had first done a bit of homework. Furthermore, given the circumstances of this case, where there was a proposed sale of the property for more than enough to fully pay all that may be due the mortgage holder, with money to spare, how counsel can allege that there was a need for some kind of adequate protection is a mystery. What was it counsel thought her client needed to be protected from?

*See, In re Szymanski,* 344 B.R. at 897 (discussing the parties' burdens and responsibilities in connection with motions for relief from stay). Admittedly, counsel does state that she filed the motion based upon the proposition that the sale might not go through, but if that was the case why file the motion so soon? Why not wait to see what really happened and whether there was anything to complain about? If counsel was not in a hurry to have the issue decided, why initiate proceedings which the court is required to quickly confront and promptly rule upon? *See,* 11 U.S.C. § 362(e). Without satisfactory answers to these questions, the court can only conclude that counsel filed the motion as some kind of unthinking, knee jerk reaction to the bankruptcy, and by doing so failed to make a reasonable inquiry into whether the claims and allegations it contained were warranted by the circumstances of this case. *See, In re Brooks,* 305 B.R. 827, 829 fn. 2 (Bankr. N.D.Ohio 2004)("I have heard that mortgagees often grade their lawyers on how quickly they can have a Motion for Relief on file .... This Court assesses the lawyer's performance on whether it comports with Fed. R. Bankr.P. 9011.").

█ Though Wells Fargo's motion says all of the right things where relief from stay is concerned, saying the right things without a reasonable inquiry into the legal and factual basis for those allegations is not enough. The pre-filing inquiry which Rule 9011 requires demands more than making assumptions and then filing something in the hope that they will prove to be correct. Instead, the rule requires a reasonable inquiry which obligates counsel to "assess the nature of the record and how it related to and supported [the] motion." *Brown v. National Board of Medical Examiners,* 800 F.2d 168, 172 (7th Cir.1986).

Counsel did not do so here and so has violated the rule.

■■■■ Once the court has found a violation of Rule 9011 whether or not it imposes sanctions, together with the nature of any such sanction, is a matter committed to the court's discretion. Fed. R.Civ.P. Rule 9011(c)("the court may ... impose an appropriate sanction"). In fashioning an appropriate sanction, the court's primary goal should be deterrence. Fed. R. Bankr.P. Rule 9011(c)(2). *See also, White v. General Motors Corp. Inc.,* 908 F.2d 675, 685 (10th Cir.1990), *cert. denied,* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991); *In re Rimsat, Ltd.,* 229 B.R. 914, 921 (Bankr.N.D.Ind.1998), *decision aff'd,* 230 B.R. 362 (N.D.Ind.1999), *aff'd.,* 212 F.3d 1039 (7th Cir.2000).

In her response to the order to show cause, counsel focused her attention on why the court should not impose sanctions and did not really address what might be an appropriate sanction should the court come to the conclusion that they were called for. Accordingly, not only has she apparently waived the issue, she has also left the court more or less on its own as to how best to address the situation. Monetary sanctions, whether payable to the court or to the opposing party, are often preferred because they easily formulated, readily quantified and satisfying them can be readily determined. Something is paid, the matter is over and done with and everyone moves on, with the expectation that the issue will never again need to be considered. Effective non-monetary sanctions, such as some type of CLE, can be more difficult to formulate and somehow the court needs to monitor whether counsel has fulfilled them, thereby causing the issue to linger for all concerned. *See e.g., In re Thomas,* 337 B.R. 879, 895 (Bankr. S.D.Tex.2006); *Hatcher v. Johnson,* 1995 WL 250534 (S.D.N.Y.1995). Consequently, the court would prefer to impose some kind of monetary sanction but here its ability to do so is subject to some limitations.

Since the court initiated the sanctions inquiry, it may not order reimbursement of the trustee's attorney fees and expenses, but monetary sanctions payable to the court are still available. Fed. R. Bankr P. Rule 9011(c)(2); *In re Crofford,* 301 B.R. 880, 887 (8th Cir. BAP 2003); *In re Brown,* 319 B.R. 876, 881 (Bankr.N.D.Ill. 2005). Monetary sanctions may not be imposed on the court's own initiative, however, unless the order to show cause was issued "before [the] voluntary dismissal or settlement of the claims made by or against the party ... whose attorneys are to be sanctioned." Fed. R. Bankr.P. Rule 9011(c)(2)(B). Wells Fargo's motion for relief from stay was never dismissed or settled, but on the eve of trial counsel did file a motion to dismiss it—a motion which the court denied—and the court did not initiate its sanctions inquiry until after that motion had been filed.

■■■■ Little seems to have been written as to what constitutes the voluntary dismissal specified in Rule 9011(c)(2)(A). To some extent, it brings to mind Rule 41(a) which is titled "Voluntary Dismissal." If a dismissal is by stipulation of the parties or is sought before a filing has been responded to, it is automatic. Fed. R. Civ. Pro. Rule 41(a). Anything else requires an order from the court. Fed. R. Bankr.P. Rule 41(a)(2). In the court's opinion, the voluntary dismissal or settlement referred to by Rule 9011(c)(2)(A) contemplates something that eliminates the need for the court to consider the sanctionable filing. The matter must be completely disposed of before the court needs to act upon it. Consequently, unless the dismissal is automatic, whether as a matter of right or by agreement of the parties, a motion to dismiss must be filed under circumstances

which will allow it to be properly considered in accordance with the court's local rules and procedures; to unilaterally file a motion to dismiss on the eve of trial will not suffice. This court's local rules contemplate that opposing counsel will have at least thirty days to respond to such a motion. *See,* N.D. Ind. L.B.R. B–7007–1(a). As a result, Wells Fargo's motion to dismiss not only was not but could not possibly have been granted before the hearing at which the court was to consider its motion for relief from stay. Therefore, monetary sanctions, if payable to the court, are an available option. *Accord, In re Brown,* 319 B.R. 876, 881 (Bankr. N.D.Ill.2005); *In re Crofford,* 301 B.R. 880, 887 (8th Cir. BAP 2003).

■ The court is satisfied that this situation calls for something more significant then simply a determination that counsel has violated Rule 9011. Some type of affirmative sanction is in order. The court also feels that a modest monetary sanction would be the quickest, easiest and most direct path by which the rule's deterrent purpose can be achieved. Paying the clerk of this court the sum of $300 should suffice. If it does not and the problem persists, more severe, *see, Brown,* 319 B.R. at 881–882; *Matter of McCarthy,* 312 B.R. 413, 420–21 (Bankr.D.Nev.2004), or more creative, *see, Thomas,* 337 B.R. at 895, alternatives can be tried. An appropriate order will be entered.